Serling Rooks Hunter McKoy Worob & Averill LLP
119 Fifth Avenue, Third Floor
New York, New York 10003
Tele.: 212-245-7300
Fax:   212-586-5175
Email: jls@serlingrooks.com

Frey & Kozak LLP
119 Fifth Avenue, Third Floor
New York, New York 10003
Tele.: 212-381-9212
Fax:   212-656-1735
Email: mfrey@freykozaklaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DARKO ENTERTAINMENT, LLC as Successor  :     Case No.
in Interest to GBA FILM, LLC and YOU DON'T
KNOW ME PRODUCTIONS, INC.,                          :
                                                                                    **COMPLAINT**
                                    Plaintiff,                   :

            -against-                                              :

MAGNOLIA PICTURES LLC,                               :

                                    Defendant.              :
------------------------------------------------------------X

Plaintiff DARKO ENTERTAINMENT, LLC, as successor in interest to GBA FILM, LLC and YOU DON'T KNOW ME PRODUCTIONS, INC., alleges as follows:

**INTRODUCTION**

1. This case arises out of Defendant's failure and refusal to pay Plaintiff and properly account to it for monies due Plaintiff, arising out of Defendant's distribution and commercial exploitation of two independent motion pictures produced by Plaintiff and entitled *God Bless America* and *World's Greatest Dad* (collectively the "Pictures").

1

## JURISDICTION, VENUE AND JURY DEMAND

2. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the amount in controversy excess Seventy-Five Thousand Dollars ($75,000), and there is complete diversity of the parties. Plaintiff Darko Entertainment LLC (herein "Plaintiff" and/or "Darko") is a limited liability corporation duly organized and existing under and by virtue of the laws of the State of California. Defendant Magnolia Pictures LLC (herein "Defendant" and/or "Magnolia") is a limited liability corporation duly organized and existing under and by virtue of the laws of the State of Delaware, and conducts business in New York State as a Foreign Limited Liability Company.

3. Venue is proper in New York County as the Defendant resides in New York County, and New York County is the district in which a substantial part of the events and omissions giving rise to Plaintiff's claims occurred.

4. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury in this action of all issues so triable.

## PARTIES

5. Plaintiff Darko Entertainment LLC is a limited liability corporation duly organized and existing under and by virtue of the laws of the State of California, and maintains its principal place of business in Beverly Hills, California. Darko is the successor in interest to, and was the sole shareholder of, You Don't Know Me Productions, Inc. ("YDKM"), a corporation that had been duly organized and existed under and by virtue of the laws of the State of New York for the purpose of producing the motion picture entitled *World's Greatest Dad,* and is the successor in interest to, and was the sole member of, GBA Film, LLC ("GBA"), a limited liability corporation

that had been duly organized and existed under and by virtue of the laws of the State of California for the purpose of producing the motion picture entitled *God Bless America*.

6. In or about October 2016 GBA was voluntarily dissolved, and its assets and rights to collect debts were transferred and assigned to Plaintiff. In or about November 2017 YDKM was voluntarily dissolved, and its assets and rights to collect debts were transferred and assigned to Plaintiff.

7. Defendant Magnolia Pictures LLC is a limited liability corporation duly organized and existing under and by virtue of the laws of the State of Delaware and conducts business in New York State as a Foreign Limited Liability Company.

## **FACTS**

8. Plaintiff is engaged in the business of creating, producing, and financing director driven independent motion pictures. In furtherance thereof in or about June 2008 Plaintiff formed YDKM for the purpose of developing and creating the motion picture *World's Greatest Dad*, and in or about April 2011 Plaintiff formed GBA for the purpose of developing and creating the motion picture *God Bless America*.

9. Defendant is engaged in the business of distributing and commercially exploiting foreign and independent films.

10. On May 18, 2009 YDKM entered into a written agreement with Defendant, which agreement was deemed to be effective as of March 10, 2009, pursuant to which YDKM licensed to Defendant; *inter alia*; the rights to distribute and commercially exploit the motion picture *World's Greatest Dad* (the "World's Greatest Dad License Agreement").

11. On October 31, 2011, GBA entered into a written agreement with Defendant pursuant to which GBA licensed to Defendant; *inter alia*; the rights to distribute and commercially exploit the motion picture *God Bless America* (the "God Bless America License Agreement")

**The *World's Greatest Dad* License Agreement**

12. In or about July 2009 Defendant released and distributed the motion picture *World's Greatest Dad* and commenced the commercial exploitation of the rights that it had been granted pursuant to the terms of the World's Greatest Dad License Agreement.

13. The term of the World's Greatest Dad License Agreement was fifteen (15) years from the initial United States release date, which term may be extended for an additional five (5) years if certain conditions are met.

14. In exchange for the right to commercially exploit the motion picture, Defendant agreed that it would make certain payments, and render accounting statements on a calendar quarterly basis for the first two years of the term, on a semi-annual basis for the next two (2) years, and annually thereafter.

15. The World's Greatest Dad License Agreement granted YDKM audit rights, and provided that if an audit would reveal an underpayment greater than five percent (5%) of the aggregate monies actually owed, the Defendant "shall be responsible for the reasonable costs associated with such audit and shall immediately provide Licensor with a revised statement."

**The *God Bless America* License Agreement**

16. In or about April 2012 Defendant released and distributed the motion picture *God Bless America* and commenced the commercial exploitation of the rights that it had been granted pursuant to the terms of the God Bless America License Agreement.

17. The term of the God Bless America License Agreement was fifteen (15) years from the Effective Date of October 31, 2011, which term may be extended for an additional five (5) years if certain conditions are met.

18. In exchange for the right to commercially exploit the motion picture, Defendant agreed that it would make certain payments, and render accounting statements on a calendar quarterly basis for the first two years of the term, on a semi-annual basis for the next two (2) years, and annually thereafter.

19. The God Bless America License Agreement granted GBA audit rights, and provided that if an audit would reveal an underpayment greater than five percent (5%) of the aggregate monies actually owed, the Defendant "shall be responsible for the reasonable costs associated with such audit and shall immediately provide Licensor with a revised statement."

20. Despite the provisions of the World's Greatest Dad License Agreement and the God Bless America License Agreement (collectively the "License Agreements") which obligated Defendant to render timely accounting statements and make payments in a timely manner, Defendant failed to do so. Moreover, the accounting statements which were sent appeared to contain excessive fees and provided for payments that appeared to unusually low.

21. By virtue of the foregoing, on September 21, 2016 Darko sent an audit notice (the "Audit Notice") notifying Magnolia of Darko's intention to inspect Magnolia's books and records for the motion pictures *God Bless America* and *World's Greatest Dad,* for the period of inception through the third quarter of 2016, for each Picture respectively.

22. Magnolia acknowledged receipt of the Audit Notice and Darko's rights to audit Magnolia's books and records as the successor in interest to GBA and YDKM.

23. The audit of Magnolia's books and records by Darko's auditor, the certified public accounting firm of Miller Kaplan Arase LLP ("MKA"), commenced on November 10, 2016 and concluded on August 2, 2018.

24. On November 19, 2018 MKA prepared an audit report concerning *God Bless America* for the period commencing October 31, 2011 through September 30, 2016 (the "GBA Audit Report"), and an audit report for *World's Greatest Dad* for the period commencing March 10, 2009 through September 30, 2016 (the "YDKM Audit Report").

### The *God Bless America* Audit Report

25. The GBA Audit Report was performed solely for the purpose of determining areas of Defendant's underpayment to Plaintiff, and/or its predecessor in interest GBA.

26. The GBA Audit Report was limited by the failure and refusal of Defendant to provide the complete books and records, and information, with respect to *God Bless America*, including without limitation the refusal to provide unredacted documents in certain instances. The GBA Audit Report specifically notes that by virtue of Magnolia's refusal to comply with MKA's document and information requests, which requests are set forth in detail in the report, the GBA Audit Report was based upon a limited inspection of Magnolia's records.

27. The GBA Audit Report determined that there was an underpayment, that the underpayment exceeded five (5%) of the monies actually owed, and that therefore, and as provided by paragraph 29 of the God Bless America License Agreement, Magnolia was "responsible for the actual costs associated with such audit and shall within 15 business days of written notice of underpayment, provide Licensor [Plaintiff] with a revised statement together with the amount of such underpayment."

28.     The GBA Audit Report concluded that the amount of the underpayment through September 30, 2016, including accounting fees but not including interest on the findings, was One Hundred and Seventy-Eight Thousand and Thirty-One Dollars ($178,031.00).

29.     Magnolia initially disputed the results of the GBA Audit Report, but eventually conceded that there had in fact been an underpayment.

30.     In fact, as Magnolia had frustrated MKA's inspection of Magnolia's books and records and refused to provide all necessary documents and information, the actual amount of the underpayment was most likely greater than the amount as determined by the GBA Audit Report.

31.     As a result of the GBA Audit Report, and subsequent to Magnolia's receipt of same, Magnolia agreed to liquidate the home video reserve account, thereby providing Plaintiff with Sixty Two Thousand Nine Hundred and Twenty Five Dollars ($62,925.00), which funds had been improperly withheld.

32.     However, Magnolia refused to recognize other items of underpayment, refused to pay interest on funds that had been improperly withheld and refused to pay the reasonable costs associated with the audit, including without limitation MKA's fees.

33.     By virtue of the foregoing, the total amount owed to Plaintiff from Defendant concerning the motion picture *God Bless America*, including interest on late payments and outstanding reasonable costs associated with the Audit Report, is an amount in excess of Two Hundred and Fifty Thousand Dollars ($250,000.00).

**The *World's Greatest Dad* Audit Report**

34.     The YDKM Audit Report was performed solely for the purpose of determining areas of Defendant's underpayment to Plaintiff, and/or its predecessor in interest YDKM.

35. The YDKM Audit Report was limited by the failure and refusal of Defendant to provide the complete books and records, and information, with respect to *World's Greatest Dad*, including without limitation the refusal to provide unredacted documents in certain instances. The YDKM Audit Report specifically notes that by virtue of Magnolia's refusal to comply with MKA's document and information requests, which requests are set forth in detail in the report, the YDKM Audit Report was based upon a limited inspection of Magnolia's records.

36. The YDKM Audit Report determined that there was an underpayment, that the underpayment exceeded five (5%) of the monies actually owed, and that therefore, and as provided by paragraph 29 of the You Don't Know Me License Agreement, Magnolia was "responsible for the actual costs associated with such audit and shall within 15 business days of written notice of underpayment, provide Licensor [Plaintiff] with a revised statement together with the amount of such underpayment."

37. The YDKM Audit Report concluded that the amount of the underpayment through September 30, 2016, including accounting fees but not including interest on the findings, was One Hundred and Eighty-Five Thousand and Two Hundred and Sixty Dollars ($185,260.00).

38. Magnolia has disputed the results of the YDKM Audit Report and has not conceded that there has in fact been an underpayment.

39. In fact, as Magnolia had frustrated MKA's inspection of Magnolia's books and records and refused to provide all necessary documents and information, the actual amount of the underpayment is most likely greater than the amount as determined by the YDKM Audit Report.

40. Unlike its actions upon receipt of the GBA Audit Report, upon receipt of the YDKM Audit Report Magnolia has not liquidated the home video reserve account with respect to *World's Greatest Dad*, which reserve account totals Fifty Thousand Five Hundred and Fifteen

Dollars ($50,515.00), together with the associated unliquidated residual accrual account in the amount of Twenty Five Thousand Three Hundred and Forty Three Dollars ($25,343.00).

41. By virtue of the foregoing, the total amount owed to Plaintiff from Defendant concerning the motion picture *World's Greatest Dad*, including interest on late payments and outstanding reasonable costs associated with the Audit Report, is an amount of approximately Two Hundred and Ninety Five Thousand Dollars ($295,000.00).

## COUNT ONE
### (Breach of Contract)

42. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "41" as if fully set forth herein.

43. Plaintiff's predecessors in interest GBA and YDKM entered into the respective License Agreements with Defendant.

44. Pursuant to the terms of the License Agreements, Defendant was required to render timely and accurate accounting statements to Plaintiff concerning monies received by Defendant from the commercial exploitation of the Pictures.

45. Pursuant to the terms of the License Agreements, Defendant was required to make timely and accurate royalty payments to Plaintiff from the monies received by Defendant from the commercial exploitation of the Pictures.

46. Defendant has failed to render timely and accurate accounting statements to Plaintiff and has failed to make timely and accurate royalty payments to Plaintiff, concerning the Pictures that had been licensed to Defendant for commercial exploitation.

47. Pursuant to the terms of the License Agreements Plaintiff has conducted audits of Defendant's books and records concerning the Pictures.

48. Defendant, in further breach of the terms of the License Agreements, failed and refused to provide Plaintiff with the complete books and records and other information that was required so as to enable Plaintiff's auditor to conduct full and complete audits.

49. The incomplete audits that were conducted on the Pictures uncovered underpayments in the collective amount of Three Hundred and Twenty-Six Thousand One Hundred and Fifteen Dollars ($326,115.00).

49. The total amount currently due and owing Plaintiff from Defendant, inclusive of interest and the reasonable costs of the audits is no less than the amount Five Hundred and Forty-Five Thousand Dollars ($545,000.00).

## COUNT TWO
### (Accounting)

50. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "49" as if fully set forth herein.

51. Plaintiff's predecessors entered into the Licensing Agreements with Defendant as set forth above.

52. Prior to the commencement of this action, and as provided by the terms of the Licensing Agreements, Plaintiff was granted the right to conduct a full and complete audit so as to determine the accuracy of statements rendered to Plaintiff and the payments thereunder, concerning Defendants commercial exploitation of the Pictures in accordance with the terms of the License Agreements.

53. Defendant failed and refused to permit Plaintiff to conduct a full, fair and unfettered audit.

54. Upon information and belief, the amount of the monies due and owed to Plaintiff by Defendant are greater than those uncovered during the limited audit that Defendant permitted Plaintiff to conduct.

55. Plaintiff has no adequate remedy at law.

56. Plaintiff is entitled to a full accounting and to be paid any amounts found to be due it, together with interest, the costs, and disbursements, including without limitation the costs of the limited audits previously conducted.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Darko Entertainment, as successor in interest to GBA Films, LLC and You Don't Know Me Productions, Inc. demand judgment of Defendant Magnolia Pictures LLC as follows:

A. On the First Count damages in an amount to be determined at trial but reasonably believed to be no less than the amount of Five Hundred and Forty-Five Thousand Dollars ($545,000.00);

B. On the Second Count full accounting of all funds received, disbursed and expended by Defendant concerning the motion pictures *World's Greatest Dad* and *God Bless America*;

C. Attorney's fees, pre-judgment interest and the costs and disbursements of this action; and

D. Such other further and additional relief as the Court deems just and equitable under the circumstances.

Dated: New York, New York
     September 30, 2020

                                       SERLING ROOKS HUNTER MCKOY
                                       WOROB & AVERILL LLP
                                       By:/Joseph l. Serling/
                                          Joseph L. Serling (JS3765)

           119 Fifth Avenue, Third Floor
           New York, New York 10003
           Tele.: 212-245-7300
           Fax:   212-586-5175
           Email: jls@serlingrooks.com

             -and-

           FREY & KOZAK LLP

           By:/Mark S. Frey/
             Mark S. Frey (MF3929)
           119 Fifth Avenue, Third Floor
           New York, New York 10003
           Tele.: 212-381-9212
           Fax:   212-656-1735
           Email: mfrey@freykozaklaw.com